WILLIAM J. SCHULTZ, ADMINISTRATOR, APPELLANT, V. HENRY BLECKWEHL, APPELLEE.

280 N. W. 257

FILED JUNE 17, 1938. No. 30377.

*A. R. Oleson,* for appellant.

*Cook & Cook* and *Ted C. Tow, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and BLACKLEDGE, District Judge.

MESSMORE, J.

The administrator of the estate of Catherine Bleckwehl, deceased, brings this action in the district court for Santon county against her surviving husband, Henry Bleckwehl, to require an accounting by him. The pleadings are at great length, but the petition of plaintiff alleges, substantially, that defendant Henry Bleckwehl obtained control of the property of Catherine Bleckwehl, formerly Catherine Schwarting, at the time of his marriage to her, and collected the rents, income and profits from her property, paid off a mortgage on his own land, and that said money was never given to Henry Bleckwehl, but he was permitted to use said money with the understanding that he was more experienced in financial matters, the handling of real estate and the investment of money, and that it would be more convenient and satisfactory for him to take charge of and manage the affairs of his wife. The answer details a general history of the estate left by Catherine Bleckwehl's former husband and an analysis of the financial condition existing from and after the time she became administratrix of her former husband's estate, up to and including the time of her death in 1933. The evidential facts pleaded will be more fully covered in the opinion.

The trial court appointed a referee to hear the evidence and report. The referee filed a report which, in effect, stated that there was insufficient proof on the part of the plaintiff to sustain the allegations of his petition. The administrator then filed objections to the report of the referee,

stating, in substance, that such report failed to set out the facts in reference to an accounting, was insufficient in this behalf, and was composed of legal conclusions drawn from the evidence in the case. The trial court affirmed the report of the referee and dismissed plaintiff's action. The appeal to this court is by the administrator of the estate of Catherine Bleckwehl.

Plaintiff's principal assignments of error are that the court "erred in rendering its judgment of dismissal of plaintiff's action because there is no evidence in the record which is competent to sustain such judgment;" and that the court "erred in disregarding the competent evidence in the record sustaining the claim of plaintiff and that the finding and judgment is not supported by the evidence but is contrary to the decided weight of the competent evidence in favor of plaintiff."

The record discloses that George Schwarting, the first husband of Catherine Bleckwehl, deceased, died in January, 1909, possessed of considerable real and personal property in Cuming county, Nebraska, the inventory of his estate showing 835 acres of land, subject to a 3,000-dollar mortgage. He died intestate leaving his surviving widow Catherine and ten children. His estate was administered in Cuming county. Just prior to his death he had purchased a half section of land in Colorado for $14,400. There remained owing on the purchase price the sum of $11,000. The widow and two of her children went to Dodge, Nebraska, and gave two notes, totaling $11,000, to cover the balance owing on the purchase price, and gave a mortgage on their interest in the inherited property to secure the notes. The widow subsequently obtained a loan of $6,400 on her share of the inherited land, and borrowed from the Howells State Bank the sum of $5,358.90, taking up the notes in July and August of 1909, in amount $11,758.90. She sold the Colorado land in 1917 for $3,520, of which she individually received $1,760, leaving her net loss on this land in the sum of $9,998.90. No claims were filed against the estate of her husband for this amount. She retained

the personal property of her former husband's estate and acknowledged receipt thereof for the minor children, for whom she was appointed guardian. The actual amount of the personal property was $3,440.92. She received actually no money for this amount. Therefore, in 1909 Mrs. Schwarting had obligated herself in the sum of $13,500 with no money to show therefor. On October 29, 1913, she was married to defendant Henry Bleckwehl, who was farming his own 160-acre farm in Stanton county, which land was subject to a 5,000-dollar mortgage. Upon his marriage to Catherine Schwarting, he removed to the farm on which she lived, and there they remained together until December, 1920, when they moved to Anaheim, California.

During the period that the Bleckwehls resided on the Cuming county land, some of defendant's children, together with some of Catherine's children by her former marriage, resided on the farm with them. The sale of defendant's personal property on his farm, when he left to reside on his wife's farm, grossed $4,000. He claimed to have had some money from other sources, in the amount of $2,000, and that in 1915 he paid the mortgage on his land in the sum of $5,000 with his own money. Some of the personal property owned by him he took to the Cuming county farm. He had seven children by a former marriage, and there were seven of the Schwarting children at home at the time the couple were married. The record discloses that defendant contributed to the support of all of the children until some of them left home to be married, or to otherwise follow their own course in life.

November 8, 1915, a judgment in partition was entered in the district court for Cuming county, and the decree of distribution discloses the payment to the adult heirs of their respective shares, and the amount of each minor's share to Catherine Bleckwehl as their guardian. It is also shown that upon reaching majority each child received his or her share of their father's estate, and, in fact, Catherine Bleckwehl paid them interest on the principal. She did charge them for a certain period of time, until her mar-

riage to defendant, for their support and maintenance, as disclosed by her guardianship reports. She became, by virtue of the partition proceedings, the owner of 200 acres of the land, and her husband owned his 160 acres.

At the time they moved to California the rent from this land from the different tenants thereof was put in the Howells State Bank and the Farmers State Bank of Howells, and the funds were intermingled and were the property of both the husband and the wife. The taxes, repairs and all incidentals for the upkeep of the real estate were paid by the bank, and the balance sent to a bank in Anaheim, where the money was used by them for their living expenses. At the time defendant removed to California with his wife he owned his farm and had $12,500 in cash of his own money, and they realized from the farm sale of personal property the sum of $5,700. About $5,800 was invested in a residence in Anaheim and title taken in the name of defendant.

The record discloses certain loans made in 1918 by defendant which he claimed were made by him with his own money, and that such loans were repaid. A trip to Germany is included in the expense, as well as the cost of rebuilding certain buildings on one of the parcels of land, digging of a well and repair of a windmill, amounting in all to about $2,400, and payment of taxes and some other items.

Plaintiff contends that defendant should account to the administrator of Catherine Bleckwehl's estate, and produces records of certain banks to show deposits made in the name of Henry Bleckwehl during the period of his married life with Catherine, and in addition thereto one exhibit, being a lease of certain premises signed by defendant as agent and husband of Catherine Bleckwehl. There is nothing in the record to disclose that defendant was the agent of his wife. The facts, on the contrary, disclose that the couple had lived in harmony, had worked together to rear the families of both, and had used the income from the farms, after their removal to California, to pay their

current expenses, and did not increase the original amounts by investment. Both had the privilege of drawing, and did draw, from the account in the bank, and both, apparently, attended to certain business matters, incident to their own way of managing their affairs. The record is bare of any agreement existing between the husband and wife as to his managing the business affairs of his wife and accounting to her in any particular, or that in any instance he was acting as her agent. The burden is placed upon the plaintiff to prove agency by a preponderance of the evidence. It is well established that a declaration on the part of a party that he is an agent is insufficient to prove agency, and this rule is too well-settled to require discussion.

"(1) Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement, Agency, sec. 1. Comment on subsection (1) reads:

"a. The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.

"b. It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it.' On the other hand, there is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary."

The record in this case fails to establish the relationship of agency between Henry and Catherine Bleckwehl.

It is not necessary in this case to detail the accounting, in view of our holding. Suffice it to say that the total

amount of rents collected from the land owned by Catherine Bleckwehl, during the period from 1920 to 1932, inclusive, was $20,558.65, and after deducting certain expenses, such as taxes, improvements, interest on loan, and payment on principal of loan, there was remaining a balance of $9,537.78, which was transferred to the joint account in the bank at Anaheim. In 1922 one of the minors became of age, and Catherine Bleckwehl used $4,862.16 of her private funds to pay the minor, in order to terminate the guardianship. *Contra* to this evidence is the plaintiff's evidence of the amount of deposits, as reflected by the bank records, and the signed lease wherein the defendant signed as agent and husband of Catherine Bleckwehl, together with the loans made, as described in the evidence.

In view of the evidence, we believe the plaintiff has failed to establish his case by a preponderance thereof. The referee so reported, and the trial judge sustained the referee's findings.

The first proposition of law cited by plaintiff is: "An administrator duly appointed in Nebraska has the authority to proceed in the courts of this state to recover any assets belonging thereto which can be recovered in the courts of this state." This proposition is not controverted but conceded by the defendant.

The second proposition of law cited by plaintiff is: "In a suit against an agent for an accounting it is incumbent to show the agent's receipt of money or property of his principal and its amount and then it is incumbent on the agent to show disbursements were made for the account of the principal and that the same were authorized or accepted by the principal." This second proposition of law would become essential to a disposition of the instant case only after the plaintiff had established by a preponderance of the evidence that the defendant was the agent of his wife, Catherine Bleckwehl, during her lifetime, and in this the plaintiff has failed.

The order of the trial court approving and sustaining the referee's report is

AFFIRMED.